IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NAKINA LASHA LOWERY,

      Plaintiff,

v.

DOVER STAFFING and
DEKALB COUNTY,

      Defendants.

CIVIL ACTION NO.
1:15-CV-03268-WSD-LTW

### MAGISTRATE JUDGE'S ORDER AND
### NON-FINAL REPORT AND  RECOMMENDATION

This case is presently before the Court on Defendant Dover Staffing's ("Dover") Motion to Dismiss Plaintiff's First Amended Complaint Under Rule 12(b)(6) ("Dover Staffing's Motion to Dismiss," Doc. 26), and Defendant DeKalb County's ("DeKalb") Motion to Plaintiff's Amended Complaint ("DeKalb County's Motion to Dismiss," Doc. 35).  For the reasons outlined below, this Court **RECOMMENDS** that Defendant Dover Staffing's Motion to Dismiss be **DENIED** (Doc. 26), and Defendant DeKalb County's Motion to Dismiss be **DENIED** (Doc. 35).

### BACKGROUND

Plaintiff Nakina Lasha Lowery ("Plaintiff") filed this lawsuit on September 17, 2015.  (Doc. 1).  Plaintiff alleges Defendants Dover and DeKalb (together, "Defendants") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., ("Title VII") when in retaliation for complaining of sexual harassment, they refused

to allow her to continue working in a comparable position to the one she had previously occupied.  (Am. Compl., Doc. 14).

## I.   <u>Procedural Background</u>

Plaintiff, proceeding on a pro se basis, filed an application to proceed in forma pauperis on September 17, 2015.  (Doc. 1).  That application was granted, and the Complaint was entered on the docket on November 3, 2015.  (Docs. 2, 3).  After service forms were sent to Defendants, Dover waived service and moved to dismiss the initial complaint on February 4, 2016.  (Docs. 8, 9).  DeKalb, on the other hand, refused service by the U.S. Marshal on January 13, 2016; service was attempted on the Chief Assistant County Attorney, but the "receptionist ha[d] instructions to refuse all process service." (Doc. 10).  There is no indication that anyone with DeKalb provided instructions about how to effectuate service at that time.[1]

Following Dover's first motion to dismiss the complaint, Plaintiff obtained counsel and filed her Amended Complaint on March 3, 2016.  (Doc. 14).  At the same time, Plaintiff sought and was granted an extension of time to serve DeKalb through April 1, 2016.  (Doc. 16).  Electronic summons were issued for DeKalb on March 10, 2016 (Doc. 20), and on March 23, 2016, summons were served on the Clerk of the DeKalb County CEO and Board of Commissioners (Doc. 21).  The Clerk did not appear to inform the process server of any errors in service at that time.

---

[1] Part of the problem may have been that the initial complaint named a specific department within DeKalb County as a defendant, though this is unclear.

AO 72A
(Rev.8/82)

On April 26, 2016, DeKalb filed its answer, but noted that it had "not been properly served with process in this case . . . because the individual to whom the Amended Complaint was delivered was not an authorized agent to accept service of process for DeKalb County or an individual on whom service was permitted." (Doc. 24, n.1). DeKalb, once again, did not indicate how service could be properly effectuated or identify any individual on whom service would be permitted. Defendant DeKalb refused to participate in a Rule 26(f) conference with Plaintiff and Dover, indicating that it had "not properly been served with [the] amended complaint"; DeKalb again avoided indicating how service might be effectuated. (See Doc. 34-1).

After Dover's initial motion to dismiss was denied as moot in light of the Amended Complaint, Dover too answered on June 17, 2016. (Doc. 25). Dover also moved to dismiss the Amended Complaint on June 17, 2016, arguing first, that as a temporary staffing agency, it was not an employer liable under Title VII, and second, that there were insufficient allegations to support a cause of action for retaliation under Title VII. (Doc. 26).

On July 25, 2016, summons were reissued as to DeKalb, identifying DeKalb County's interim CEO as the individual to be served. (Doc. 33). The following day, service was effectuated on administrative assistant to the interim CEO of DeKalb County, after another DeKalb County attorney refused service but indicated the assistant was authorized by law to do so. (Doc 38). DeKalb moved to dismiss the Amended Complaint that same day, arguing service had not been properly effectuated in the

3

allotted time period.  (Doc. 35).  Only then did DeKalb explain that service could only be made upon the CEO or the CEO's assistant.  (Id.).

## II.    **Allegations in the Amended Complaint**

In 2013, Dover maintained a professional services agreement with DeKalb to provide temporary services to various departments within the county.  (Am. Compl. ¶¶ 8-9).  Plaintiff was assigned by Dover to work for DeKalb in its Water Billing Division as a customer service representative.  (Am. Compl. ¶¶ 9-10).  During that assignment, Plaintiff alleges she suffered sexual harassment based upon the conduct of a male supervisor, filed an internal complaint about the harassment, and participated in an investigation that resulted in the removal of the supervisor from Plaintiff's chain-of-command.  (Am. Compl. ¶¶ 10-11).

DeKalb renewed its contract with Dover at the end of December 2013.  (Am. Compl. ¶ 13).  While all of the other employees previously assigned by Dover to DeKalb County received renewed and/or continuing assignments with DeKalb, Defendants did not place Plaintiff in a new or comparable assignment following the renewal of the contract.[2]  (Am. Compl. ¶¶ 12, 14).  Following her non-assignment, Plaintiff met with Dover's staffing manager to request a new position with DeKalb or another employer with whom Dover had a staffing contract.  (Am. Compl. ¶¶ 15, 17).  In response, the staffing manager allegedly told Plaintiff that "she was 'too messy and needed to have sat

---

[2] None of the other employees assigned and (reassigned) to DeKalb had filed complaints of sexual harassment.  (Am. Compl. ¶¶ 18-19).

4

there and kept her mouth closed and then she would have been placed like the others.'" (Am. Compl. ¶ 17).   None of the other Dover employees who obtained renewed assignments with DeKalb had complained of sexual harassment or received similar talks from Dover management, and Plaintiff alleges that her non-assignment constituted retaliation for filing her sexual harassment complaint.  (Am. Compl. ¶¶ 18-20).

The only cause of action in the Amended Complaint is for Title VII retaliation against Defendants Dover and DeKalb County for refusing to continue or renew Plaintiff's assignment with DeKalb or place her in another comparable assignment following her complaint of sexual harassment.  (Am. Compl. ¶¶ 21-26).

## **LEGAL ANALYSIS**

### I.   **Standard of Review**

As an initial matter, the Court notes that the Defendants' pending motions to dismiss (Docs. 26, 35) were filed after Defendants' respective answers (Docs. 24, 25). "[I]t is technically impossible to challenge[] the sufficiency of an allegation in a complaint, as one does in a motion to dismiss, while simultaneously admitting or denying the same allegation, as one does in an answer." Keh v. Americus-Sumter Cnty. Hosp. Auth., No. 1:03-CV-68-2 (WLS), 2006 WL 871109, at *2 (M.D. Ga. Mar. 31, 2006), aff'd, 377 F. App'x 861 (11th Cir. 2010) (motions to dismiss filed alongside answer); see also Brisk v. City of Miami Beach, 709 F. Supp. 1146, 1147 (S.D. Fla. 1989) ("Under the unambiguous, mandatory language of Rule 12(b), a motion to dismiss must be made before an answer is filed.").  As a result, "the proper rule for challenging

5

a complaint after an answer has been filed is a motion for judgment on the pleadings," under Federal Rule of Civil Procedure 12(c).  Keh, 2006 WL 871109, at *2.  Under Subsections (c) and (h)(2)(B) of Rule 12, defendants who have answered a complaint may still challenge a plaintiff's pleadings on the basis that they fail to state a claim upon which relief may be granted.  A Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss.  Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993)).  Accordingly, because there is no substantive difference between motions filed under Rule 12(b)(6) and Rule 12(c), the Court will address the arguments made in Defendants' motions to dismiss as though they had been properly raised in a motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(c), (h)(2).

Dismissal is warranted upon a motion for judgment on the pleadings if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief or it is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cnty., 960 F.2d 1002, 1009-10 (11th Cir. 1992).  A Rule 12(c) motion for judgment on the pleadings also tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim.  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)).  Thus, the factual allegations must suggest a plausible right to relief, which requires more than the "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).  A court does not consider matters outside the pleadings, unless the motion for judgment on the pleadings is converted to a summary judgment motion and all parties are given an opportunity to present relevant materials.  Fed. R. Civ. P. 12(d).

## II.   **Defendant Dover's Motion to Dismiss**

As noted above, Defendant Dover advances two arguments in support of it's Motion to Dismiss.  First, Dover contends that the allegations in the "Amended Complaint confirm . . . that Dover was not Plaintiff's statutory employer under Title VII

. . . [because] for the purposes of Title VII liability, when a temporary staffing agency places an individual with a client, the temporary staffing agency is not the worker's employer for Title VII purposes." (Doc. 26-1, pp. 3-4). Dover's first argument fails, however, because determining whether a defendant entity is an employer for liability purposes is a factual issue that should not be resolved at the motion to dismiss stage.[3]

Title VII provides that it is an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §§ 2000e-2(a)(1), 3(a). The statute defines an "employer" as "a person engaged in industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year[.]" 42 U.S.C. § 2000e(b). A person includes "corporations" under the statute. 42 U.S.C. § 2000e(a). In construing the requirements of Title VII, courts have also held that in order to qualify as an employer for purposes of liability under Title VII, there must be an "employment relationship"

---

[3] Moreover, as a factual matter, Plaintiff has alleged that the retaliation occurred not while she was placed with DeKalb, but in fact, when Dover, her alleged employer, refused to place her in any comparable assignment – at DeKalb or elsewhere – to the one she had prior to making her complaint regarding sexual harassment.

8

between the plaintiff and defendant.  Reeves v. DSI Sec. Servs., 331 F. App'x 659, 661 (11th Cir. 2009); see also Roque v. Jazz Casino Co., 388 F. App'x 402, 404-05 (5th Cir. 2010); 42 U.S.C. § 2000e(b).

It is possible for two or more businesses to be held liable for violations of Title VII under the "joint employer" theory, though this is a factual issue to be determined based upon evidence in the record.  See Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1359-61 (11th Cir. 1994).  To be considered a joint employer, an entity must exercise sufficient control over the terms and conditions of a plaintiff's employment.  Id. at 1360. Courts usually make such a determination by analyzing whether, as a matter of practice, an entity has control over:  (1) the means and manner of the plaintiff's work performance; (2) the terms, conditions, or privileges of the plaintiff's employment; and (3) the plaintiff's compensation.  Llampallas v. Mini-Circuits, Inc., 163 F.3d 1236, 1245 (11th Cir. 1998).

Here, Dover disputes that it had an employment relationship with Plaintiff for liability purposes because it was merely a staffing agency.  In making the argument, however, Dover relies exclusively on cases decided after discovery had been made into the factual circumstances of the plaintiffs' relationships with the respective defendants. (See Doc. 26-1, pp. 4-6 (citing McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256 (N.D. Ala. 2013), aff'd on other grounds, McQueen v. Wells Fargo, 573 F. App'x 836 (11th Cir. 2014); Medina v. Adecco, 561 F. Supp. 2d 162 (D. Puerto Rico 2008);

Watson v. Adecco Employ. Servs., Inc., 252 F. Supp. 2d 1347 (M.D. Fla. 2003); Williams v. Caruso, 966 F. Supp. 287 (D. Del. 1997); Astrowsky v. First Portland Mortg. Corp., 887 F. Supp. 332 (D. Me. 1995)).  Importantly, Dover does not discuss the specific allegations in Plaintiff's Amended Complaint, instead Dover appears to contend that the summary judgment opinions its cites establish that staffing agencies cannot be employers or joint employers as a matter of law under Title VII.[4]  Contravening Dover's argument, Plaintiff's Amended Complaint includes the following facts that plausibly support that Dover was her joint employer along with DeKalb County for purposes of Title VII liability:

- Plaintiff worked for or was contracted in some capacity with Dover, who assigned her to DeKalb County (Am. Compl. ¶ 9);

- Plaintiff's manager, in charge of her job assignments, was an employee of Dover (Am. Compl., ¶ 16);

- Plaintiff's manager at Dover communicated that Plaintiff's complaints regarding sexual harassment resulted in her not being reassigned to DeKalb County or to any comparable position by Dover; implying that it was Dover's decision not to reassign her (Am. Compl. ¶ 17);

- Dover specifically retaliated against Plaintiff for complaining of sexual

_____

[4] As discussed above, contrary to Dover's suggestion, the employment relationship between a plaintiff and defendant is a question of fact.  Virgo, 30 F.3d at 1359-61.

harrassment by denying her any further placement and/or employment opportunities, suggesting it effectively forced her resignation and/or engagement with another staffing company (Am. Compl. ¶ 21);

- Plaintiff suffered lost wages as a result of Dover's refusal to place her with DeKalb County or in a comparable position, implying that Dover was responsible for Plaintiff's compensation (Am. Compl. ¶ 23).

At this stage, having to accept Plaintiff's allegations as true, the Court finds that Plaintiff has alleged sufficient factual that plausibly suggest Defendant Dover was in fact her joint employer for purposes of Title VII liability – namely, that she was hired or engaged by Dover; that Dover assigned her to a work location with DeKalb; that Dover had control, authority, and influence over the terms and conditions of Plaintiff's continued work with DeKalb; and that Dover had control over her compensation.  Llampallas, 163 F.3d at 1245; see also Kaiser v. Trofholz Techs., Inc., 935 F. Supp. 2d 1286, 1292-93 (M.D. Ala. 2013) (finding sufficient allegations to sustain joint employment theory at motion to dismiss stage when plaintiff was seconded by subcontractor to general contractor/military).

Defendant Dover also argues Plaintiff's retaliation claim fails because the Amended Complaint fails to sufficiently allege that she engaged in an activity protected under Title VII, a prerequisite to maintaining a cause of action for retaliation under the statute.  (Doc. 26-1, p. 7-8)  As explained by Defendant Dover, because Plaintiff only

11

points to a single "statement of a single employee," she "does not identify or implicate any unlawful practice of Dover that Plaintiff was opposing or challenging." It is unclear whether Dover means that the single statement by Plaintiff's manager is insufficient to maintain a cause of action for retaliation at this stage,[5] or if Dover is challenging Plaintiff's retaliation claim on the theory that it cannot be held liable for retaliating against Plaintiff because the initial discriminatory conduct about which Plaintiff complained was occasioned by a DeKalb County employee, as opposed to a Dover employee. In either case, Dover's argument fails.

As discussed, Title VII makes it unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To make out a prima facie case of retaliation under Title VII, the plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action by the employer simultaneously with or subsequent to such opposition or participation; and (3) a causal connection exists between the protected activity and the adverse employment action. Crawford v. Carroll,

---

[5] This is implied by Plaintiff's sole citation to Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997), and Dover's focus on the statement of the Dover staffing manager. Notably, the Court in Little was concerned with whether a single statement by a single employee could form the basis of good faith, reasonable belief that the employer itself was engaged in unlawful employment practices, and did not involve issues of joint employment.

AO 72A
(Rev.8/82)

529 F.3d 961, 970 (11th Cir. 2008).  A complaint in an employment discrimination or retaliation case need not contain specific facts, however, establishing every element of a prima facie case under this framework.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 974 (11th Cir. 2008). Instead, the complaint must only provide enough factual matter taken as true to suggest intentional discrimination or retaliation.  Davis, 516 F.3d at 511.

In this case, Plaintiff has alleged that she engaged in protected activity when she complained of and opposed the sexual harassment of her supervisor, that she was retaliated against by DeKalb County and Dover when she was not reassigned to DeKalb County or anywhere else comparable, and that a causal connection exists based upon the statements of Dover's staffing manager and the close temporal proximity between her complaints and the termination of her work assignments.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (close temporal proximity can establish causation) (citing Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 798-99 (11th Cir. 2000)); Clover, 176 F.3d at 1354 ("To establish that causal connection, a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated'"; indeed, an "awareness by [the] decision-maker of protected conduct, in conjunction with temporal proximity of adverse employment action to protected conduct, is sufficient to create a factual issue about the causal link requirement."  (quoting Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985) and

citing <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163-64 (11th Cir. 1993)).

Applying the lenient standard outlined in <u>Davis</u> to the present case, Plaintiff has alleged

sufficient facts to plausibly suggest a claim for retaliation under Title VII, even if the

staffing manager's statement is the strongest allegation in support of the causal

connection element.

Furthermore, to the extent that Dover contend that it cannot be held liable for

retaliating against Plaintiff because she opposed the unlawful conduct of her DeKalb

County supervisor, Dover ignores the manner in which liability attaches in joint

employer circumstances.  Two defendants are joint employers "where [the] two entities

contract with each other for the performance of some task, and one company retains

sufficient control over the terms and conditions of employment of the other company's

employees." <u>Lyes v. City of Riviera Beach, Fla.</u>, 166 F.3d 1332, 1341 (11th Cir. 1999).

In these circumstances, Title VII liability can attach against both joint employers because

"an employer delegates sufficient control of some traditional rights over employees to

the other employer." <u>Id.</u>; <u>see also</u> <u>Perrymond v. Lockheed Martin Corp.</u>, No. 1:09-CV-

1936-TWT, 2009 WL 2474226, at *2 (N.D. Ga. Aug. 12, 2009) (when two companies

"exercised joint control over Plaintiff's employment conditions," because they

"exercised authority over significant aspects of Plaintiff's work," Title VII claims against

them as joint employers are not frivolous).  In such cases, "two or more ostensibly

separate entities should [b]e treated as a single integrated enterprise," and a joint

14

employer can be held liable for unlawful conduct under Title VII when it was aware of the unlawful conduct and either failed to take corrective action (in the case of discrimination) or took adverse action (in the case of retaliation).  See Watson v. Adecco Employ't Servs., Inc., 252 F. Supp. 2d 1347, 1357 (M.D. Fla. 2003) (discussing requirements for a joint employer to be liable for harassment by employee of other joint employer); Neal v. Manpower Int'l, Inc., No. 3:00-CV-277/LAC, 2001 WL 1923127, at *10 (N.D. Fla. Sept. 17, 2001) (discussing requirements for a joint employer to be liable for retaliation); see also U.S. E.E.O.C. v. Glob. Horizons, Inc., 860 F. Supp. 2d 1172, 1183-84 (D. Haw. 2012) (collecting Title VII cases noting that liability turns on the joint employer's knowledge of unlawful conduct by the other and the former's subsequent actions).  Here, Plaintiff has alleged that Dover and DeKalb were her joint employers, that Dover was aware of her protected activity, and that Dover retaliated against her as a result of its knowledge of her protected activity.  At this stage, under the liberal pleading standards discussed above, Plaintiff has made sufficient allegations to maintain a cause of action for retaliation against Dover as her joint employer, even if the facts ultimately reveal otherwise.  Accordingly, Defendant Dover Staffing's Motion to Dismiss should be **DENIED**.  (Doc. 26).

## III.   Defendant DeKalb's Motion to Dismiss

Defendant DeKalb County also moves to dismiss Plaintiff's Amended Complaint, though it seeks to do so on wholly procedural grounds.  (Doc. 35).  Specifically, DeKalb

15

argues that because it was not properly served within the time period allowed by the Local Rules and this Court's March 4, 2016 Order, Plaintiff's claims against it in the Amended Complaint should be dismissed without prejudice. (Doc. 35-1). Plaintiff responds that service of process on the Clerk of the DeKalb County CEO and Board of Commissioners on March 23, 2016, was sufficient, and even if it was not, the Court should excuse Plaintiff's untimely service on the DeKalb interim CEO's administrative assistant on July 26, 2016. (Doc. 38).

Rule 4 of the Federal Rules of Civil Procedure, which governs service, provides in relevant part:

> A summons shall be served together with a copy of the complaint. The plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m) and shall furnish the person effecting service with the necessary copies of the summons and complaint.

Fed.R.Civ.P. 4(c). Unless service is waived, the person effecting service must file proof of service with the Court in the form of a server's affidavit. Fed.R.Civ.P. 4(l). Rule 4(m) requires that a plaintiff serve the complaint within 90 days of filing it. Fed.R.Civ.P. 4(m). Failure to comply with this rule will result in dismissal of the complaint without prejudice unless the plaintiff can show good cause why service was not made within that period. Id. "Good cause exists 'only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.'" Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1281 (11th Cir. 2007) (quoting Prisco v. Frank, 929 F.2d 603, 604 (11th Cir.1991)). Even if good cause is not shown,

16

however, a "court may relieve a plaintiff of the consequences of . . . this subsection," when, for example, "a defendant is evading service or conceals a defect in attempted service." Horenkamp v. Van Winkle and Co., Inc., 402 F.3d 1129, 1132-33 (11th Cir. 2005). Indeed, "when a [] court finds that a plaintiff fails to show good cause for failing to effect timely service pursuant to Rule 4(m), the [] court must still consider whether any other circumstances warrant an extension of time based on the facts of the case." Lepone-Dempsey, 476 F.3d at 1282 (emphasis added).

In order to serve process on a state-created government entity such as a county, Fed. R. Civ. P. 4(j)(2) requires that be served on its "(A) its chief executive officer," or served "in the manner prescribed by the state's law for serving a summons or like process on such defendant." Under Georgia law, O.C.G.A. § 9-11-4(e)(5) provides that personal service against a county shall be made "by delivery . . . to the chairman of the board of commissioners . . . or to an agent authorized by appointment to receive service of process." O.C.G.A. § 9-11-4(e)(5) also states that if service is to be made against "any other public body or organization subject to an action," service should be made "to the chief executive officer or clerk thereof." (Emphasis added). The parties agree that "DeKalb County has a unique form of government with an elected chief executive officer and no provision for a 'chairman' of the board of commissioners," and its code "provides only for a "presiding officer.'" (Doc. 35-1, n.2 (citing Code of DeKalb County as revised, 1988 Organizational Act, §§ 1, 5, 11); Doc. 39, p. 4). As a result, service

17

may only be made upon DeKalb's chief executive officer pursuant to Rule 4(j)(2)(A), or upon an agent authorized by appointment to receive service of process pursuant to Rule 4(j)(2)(B) and O.C.G.A. § 9-11-4(e)(5).

In this case, Plaintiff, observing DeKalb County's unique structure and mistakenly relying on the final sentence of O.C.G.A. § 9-11-4(e)(5) applicable only to "other public bod[ies]," attempted timely service on the Clerk of the DeKalb County CEO and Board of Commissioners. (See Docs. 21, 39). Plaintiff's subsequent July 2016 service on the DeKalb County administrative assistant, while proper in that it was upon an authorized agent, was untimely based upon the Rule 4(m) and this Court's order.

The Court agrees with DeKalb that Plaintiff has not shown good cause to excuse the late service, since there was no outside, affirmative factor that caused the faulty service, merely a mistake by counsel regarding who was authorized by the Federal Rules, Georgia law, and DeKalb Code to accept service. See Harris v. Orange S.A., 636 F. App'x 476, 485-86 (11th Cir. 2015); Pierce v. Kyle, 445 F. App'x 201, 202 (11th Cir. 2011). However, the Court is also required to consider whether there are other circumstances that warrant extension of the time period for service, thereby allowing the July 2016 service to stand. Lepone-Dempsey, 476 F.3d at 1282 (11th Cir. 2007). In this case, there are two circumstances that favor granting such an extension. First, as discussed above, at no time (1) during attempted service on DeKalb attorneys (Doc. 10); during attempted service on the DeKalb Clerk (Doc. 21); or (3) in DeKalb County's

18

Answer indicating that service had not been perfected against it (Doc. 24), did DeKalb explain who at the County was an agent authorized to accept service.[6]  Once it was finally explained, Plaintiff did serve DeKalb through an authorized agent on July 26, 2016.  (Doc. 38).  While the actions (and/or omissions) of DeKalb do not constitute improper or faulty advice that would provide Plaintiff "good cause" to excuse untimely service under Rule 4(m), they _may_ reflect an attempt to evade service and/or avoid correcting inadvertent defects to Plaintiff's attempted service – service about which it was obviously aware.  As noted above, the Court should consider these circumstances in allowing a party more time to perfect service.  Horenkamp, 402 F.3d at 1132-33. Second, if the Court refused to allow Plaintiff's service to stand, DeKalb would be dismissed from the case without prejudice, and Plaintiff would simply be required to utilize more of this Court's resources to refile its claims, to again serve DeKalb, and for DeKalb to again appear and defend itself.  The Advisory Committee was clear that major revisions of Rule 4 were made in order to "facilitate the service of summons and complaint," to "enhance the cost-saving practice of securing the assent of the defendant," and to "reduce[] the hazard of commencing an action" against state agencies and officers by assuring plaintiffs of "adequate time to cure defects in service." Fed.R.Civ.P. 4, Advisory Committee Note, 1993 Amendments; see also Lepone-

---

[6] Although not discussed in the parties briefs, it is unclear whether service was attempted on the DeKalb County CEO or the extent to which the CEO was, in practice, available and/or amenable to service.

Dempsey, 476 F.3d at 1282 (relying on the Advisory Note to "provide[] guidance as to what factors by justify the grant of an extension of time absent a showing of good cause). To grant DeKalb's motion, then, would require this action to be wholly recommenced against DeKalb, and would serve no clear function but to impede judicial efficiency and frustrate the purposes of the Rule. For these reasons, the Court finds that additional factors warrant a "permissive extension of time" for service, and that Defendant's July 2016 service should stand. Lepone-Dempsey, 476 F.3d at 1282; see also Horenkamp, 402 F.3d at 1132-33. Accordingly, Defendant DeKalb County's Motion to Dismiss should be **DENIED**. (Doc. 35).

## SCHEDULING CONFERENCE

Should the District Court adopt the report and recommendation of this Court, the parties – including Defendant DeKalb County – are hereby **ORDERED** to conduct a scheduling conference pursuant to Federal Rule of Civil Procedure 26(f) within twenty-one (21) days of the District Court's order, and thereafter submit to the Court a joint preliminary report and discovery plan. The Clerk of the Court is **DIRECTED** to submit the same to the undersigned at that time.

## CONCLUSION

Based on the foregoing reasons, the undersigned **RECOMMENDS** that Defendant Dover Staffing's Motion to Dismiss be **DENIED** (Doc. 26), and that Defendant DeKalb County's Motion to Dismiss also be **DENIED** (Doc. 35).

20

      **SO REPORTED AND RECOMMENDED**, this   __6th__   day of December, 2016.


                        /s/LINDA T. WALKER           
                        LINDA T. WALKER
                        UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)